Opinion filed August 13, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 13,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00306-CR 

                                                    __________

 

                                     JOSE ANGEL SOLIZ, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR33156

 



 

                                             M E M O R A
N D U M   O P I N I O N

 

The
jury convicted Jose Angel Soliz of aggravated sexual assault of a child and
assessed his punishment at eighteen years confinement and a $10,000 fine.  We
affirm.








In
his first and second issues on appeal, appellant argues that the evidence is
legally and factually insufficient to support his conviction.  To determine if
the evidence is legally sufficient, we must review all of the evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.   Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State,
17 S.W.3d 664 (Tex. Crim. App. 2000).  To determine if the evidence is
factually sufficient, we must review all of the evidence in a neutral light and
determine whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson
v. State, 204 S.W.3d 404, 414‑15 (Tex. Crim. App. 2006); Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  We review the
factfinder=s weighing
of the evidence and cannot substitute our judgment for that of the factfinder. 
Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis,
922 S.W.2d at 135.  Due deference must be given to the jury=s determination,
particularly concerning the weight and credibility of the evidence.  Johnson
v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000);  Jones v. State, 944
S.W.2d 642 (Tex. Crim. App. 1996).  This court has the authority to disagree
with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.

A.B.
is appellant=s
stepson.  Linda, A.B.=s
paternal grandmother, testified at trial that she has a close relationship with
A.B. and that she picks him up from school everyday.  On November 13, 2006,
when Linda picked up A.B. from school, A.B. said he needed to tell her
something.  A.B. told her that appellant touched his Aprivate part and . . . my butt.@  A.B. said appellant
touched him while appellant was giving A.B. a bath.  Linda testified that A.B.
told her appellant touched A.B.=s
Abutt@ with appellant=s penis.  Linda stated that
A.B. was crying when he told her what appellant had done to him.  A.B. said
that appellant had touched him four or five times, and A.B. gave Linda details
on where the incidents took place.  Linda called A.B.=s maternal grandmother and A.B.=s aunt.  A.B. told his
maternal grandmother and aunt that appellant had touched him inappropriately,
and they called the police.  A.B. was interviewed that day at the Children=s Advocacy Center. 

A.B.
testified at trial that appellant had touched A.B.=s private with appellant=s hand three  different
times.  One incident occurred while A.B. was in the bathroom, and another
incident occurred when appellant had A.B. stand up on the couch.  A.B. also
testified that, while in the bathtub with appellant, appellant touched A.B.=s Abutt@
with appellant=s Aprivate@ and that appellant=s Aprivate@
went inside of A.B.=s Abutt.@ Appellant threatened to
hit A.B. with a belt if A.B. told anyone.    








Cori
Armstead, coordinator of the Sexual Assault Nurse Examiner program at Midland
Memorial Hospital, testified that she examined A.B.  As part of her
examination, Armstead obtained a history from A.B.   A.B. told Armstead that
appellant put his Aprivate@ in A.B.=s Abutt@
three times.  Armstead stated that a physical exam did not reveal any sign of
trauma but that that was not unusual because the skin around the anus was
elastic and made to stretch.  Armstead said the physical examination supported
the history given by A.B.  

Nancy
Compton, a detective with the Midland Police Department, testified that she met
with Linda and A.B. at the police department and arranged an interview for A.B.
at the Children=s
Advocacy Center.  Detective Compton spoke with Linda in detail about the
allegations against appellant.  Detective Compton testified that A.B.=s interview was consistent
with the information she received from Linda.  After meeting with Linda and
A.B., Detective Compton went to appellant=s
residence. 

Detective
Compton told appellant about the allegations, and she asked appellant to meet
her at the police station.  Appellant agreed and drove his own vehicle to the
police station.  Detective Compton testified that she is fluent in Spanish and
that she spoke Spanish to appellant.  Detective Compton recorded appellant=s statement, and that
statement was later translated to English.  Detective Compton read appellant=s statement to the jury.  
In the statement, appellant said that, while he was taking a bath, his wife
asked him to bathe A.B.  While in the bathtub, appellant bent over and touched
A.B. Awrongfully.@  Appellant later stated
that he touched A.B. Aaccidentally.@  Detective Compton
testified that, during the interview, appellant used the words Awrongfully@ and Aaccidentally@ interchangeably.   

Appellant
testified at trial that he was taking a bath and that his wife came in and
asked him to bathe A.B. with him.   Appellant told his wife Ano@ because he was naked.  Appellant said he
agreed to bathe A.B. with him because his wife was pregnant and not feeling
well.  Appellant said that, when he moved A.B., his private accidentally
touched A.B.=s
backside.  Appellant further testified that he used the word Aaccidentally@ throughout his statement
and that he never used the word  Awrongfully.@  During cross-examination,
appellant admitted that he used the Spanish word Amal@ during the interview and
also a different Spanish word for accidentally.     








Olga
Bustamante, a transcriptionist with the Midland Police Department, testified
that she was fluent in Spanish and that she translated appellant=s statement from Spanish to
English.  Bustamante stated that appellant said ALo
toque mal,@ which
means AI touched him
wrongfully.@ 
Bustamante further testified that appellant also used the Spanish word Aaccidente@ during the interview.   

A.B.
testified that appellant touched his Abutt@ with appellant=s Aprivate@
and that it hurt. A.B. stated that appellant=s
Aprivate@ went inside of his Abutt.@  The jury heard evidence
that appellant penetrated A.B.=s
anus with appellant=s
sexual organ.  The jury, as the trier of fact, was the sole judge of the
credibility of the witnesses and of the weight to be given to their testimony. 
Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon 1979).  As such, the jury was free to believe
or disbelieve all or any part of any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
We find that the evidence is both legally and factually sufficient to support
appellant=s conviction
for aggravated sexual assault.  Appellant=s
first and second issues on appeal are overruled. 

In
his third issue on appeal, appellant argues that the trial court erred in
allowing Armstead to testify about her examination of A.B. because it was not
shown to be for the purpose of medical diagnosis or treatment of A.B.  The
trial court=s decision
to admit evidence is reviewed under an abuse of discretion standard.   Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  An appellate court
may not reverse that decision unless it falls outside the zone of reasonable
disagreement.  Id.  

Tex. R. Evid. 803(4) provides an
exception to the hearsay rule for  A[s]tatements
made for purposes of medical diagnosis or treatment and describing medical
history, or past or present symptoms, pain, or sensations, or the inception or
general character of the cause or external source thereof insofar as reasonably
pertinent to diagnosis or treatment.@ 
This exception is based on the assumption that the patient understands the
importance of being truthful with the medical personnel involved to receive an
accurate diagnosis and treatment. Beheler v. State, 3 S.W.3d 182, 188
(Tex. App.CFort Worth
1999, pet. ref=d). 
Appellant specifically argues that the State did not establish both that A.B.
knew the purpose in making the statement to Armstead and that A.B. understood
the need to be truthful in those statements.  








Where
very young children are responsible for relating information to their
healthcare provider, the presumption of reliability that forms the basis for
this exception may break down if they do not understand the importance of being
truthful.  Beheler, 3 S.W.3d at 189.   Nevertheless, there is no
requirement that a witness expressly state that the hearsay declarant
recognized the need to be truthful in his statements for the medical treatment
exception to apply.  Id.  Instead, the reviewing court must look to the
record to see if it supports a conclusion that the young child understood why
he needed to be honest when speaking to the caregiver.  Id. at 190. 
Likewise, it is unnecessary for the witness to use the magic words Adiagnosis@ or Atreatment.@ 
Id. at 189.  It is sufficient that the evidence reflects that the
statements were made for the purpose of medical diagnosis and treatment.  Id. 


Armstead
testified that she explained to A.B. what the exam would entail and that she
wanted to make sure no one had hurt him.  Armstead stated before the jury that
she tells children:  A[I]f
anyone has hurt you, we want to know, so that we can make sure that it is okay,
whether it be with medications or just seeing what happened. . . . [W]e just
want to make sure that you are okay, and if there is anything wrong, that we
are going to fix it.@ 
Outside the presence of the jury, Armstead stated that she gives that
explanation to every child she examines and that she gave that explanation to
A.B.  Armstead testified before the jury that she elicited information from
A.B. for treatment and diagnosis.  She testified that, after she explained the
purpose of the exam to A.B., she asked, ADo
you know why you are here?@ 
A.B. responded, ABecause
[appellant] touched my privates.@ 
The trial court did not err in allowing Armstead=s
testimony for the purposes of medical diagnosis and treatment.  Appellant=s third issue on appeal is
overruled.

The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

August 13, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.